UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MEREDITH L. MANZANO, an
individual,

      Plaintiff,

    v.

METLIFE BANK N.A., Quality
Loan Service Corp; DONN
STEIER, INC. dba SIERRA
MORTGAGE, and DOES 1 to 100,
inclusive,

      Defendants.
_____/

NO. CIV. 2:11-651 WBS DAD

<u>MEMORANDUM AND ORDER RE:</u>
<u>MOTIONS TO REMAND, TO STRIKE,</u>
<u>AND TO DISMISS</u>

----oo0oo----

      Plaintiff Meredith L. Manzano brought this action
against defendants MetLife Bank, N.A. ("MetLife"), Quality Loan
Service Corp. ("Quality Loan"), and Donn Steier, Inc. dba Sierra
Mortgage ("Sierra Mortgage"), arising out of defendants'
allegedly wrongful conduct relating to a residential loan
agreement.  Presently before the court are plaintiff's motion to
remand and Metlife's motions to dismiss plaintiff's Second
Amended Complaint ("SAC") pursuant to Federal Rule of Civil

1

Procedure 12(b)(6) and to strike plaintiff's SAC pursuant to Rule 12(f).

I.   Factual and Procedural Background

Plaintiff is the owner of real property located at 168 Beaver Trail in Mammoth Lakes, California.  (SAC ¶ 7 (Docket No. 14).)  In July of 2008, First Horizon Home Loans recorded a Deed of Trust on the property with the Mono County Recorder's Office as security for a loan for $417,000.00.  (Def.'s Req. for Judicial Notice Ex. 1 (Docket No. 18); see SAC ¶ 8.)

On April 28, 2009, MetLife filed a Corporate Reassignment of Deed of Trust with the Mono County Recorder's Office, which stated that First Horizon Home Loans conveyed the Deed of Trust on plaintiff's home to Metlife.  (Def.'s Req. for Judicial Notice Ex. 2.)  Plaintiff alleges, however, that MetLife is not the true owner of the Deed of Trust and underlying indebtedness.  (SAC ¶ 29.)

Plaintiff apparently missed at least one loan payment, as on July 8, 2010, plaintiff received a letter from MetLife regarding the possibility of loan modification following plaintiff's "failure to pay." (SAC ¶ 28.)  Plaintiff then allegedly called the loss mitigation department of MetLife and spoke to a representative who told plaintiff to stop making regular payments in order to qualify for a loan modification. (Id. ¶ 31.)  The representative allegedly told plaintiff that her credit would not be affected during the process as long as she provided MetLife with the required financial information for the modification.  (Id. ¶ 32.)

Plaintiff allegedly made a Qualified Written Request

("QWR") to MetLife on November 16, 2010.  (<u>Id.</u> ¶ 88.)  She received no response.  (<u>Id.</u>)  MetLife has allegedly recorded a Notice of Default and Notice of Trustee's Sale on plaintiff's home but has not yet foreclosed.  (<u>Id.</u> ¶¶ 10-11.)

On December 21, 2010, plaintiff filed suit in the Superior Court of the County of Mono against MetLife and Quality Loan, asserting both state and federal claims.  (Notice of Removal ¶ 1 (Docket No. 1).)  On February 22, 2011, plaintiff filed a First Amended Complaint in state court, adding another federal claim against MetLife.  (John Manzano Decl. in Supp. of Mot. to Remand ¶ 12 (Docket No. 9).)  The parties dispute whether and when MetLife was properly served with the Complaint or First Amended Complaint in state court.

On March 9, 2011, MetLife removed the action to this court on the basis of both diversity and federal question jurisdiction.[1]  (Notice of Removal ¶¶ 7-12.)  Plaintiff then filed her SAC in this court on April 12, 2011, adding a state law claim against MetLife and Sierra Mortgage, which had not previously been a party.  (Docket No. 14.)  The SAC states claims against MetLife for slander of title and quiet title, fraud, negligent misrepresentation, bad faith, wrongful foreclosure, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and predatory

---

[1]    Plaintiff attempted to amend her complaint in state court to substitute Sierra Mortgage as a Doe defendant on March 14, 2011, after the action had already been removed.  (Pl.'s Mot. to Remand at 5:14-17 (Docket No. 8).)

3

1   lending under California Financial Code sections 4970-4979.8.[2]

2   II.   <u>Discussion</u>

3       A.   <u>Motion to Remand</u>

4           Plaintiff moves to remand this action to state court on

5   the grounds that removal was untimely, MetLife waived its right

6   to remove by taking substantial action in state court, MetLife

7   failed to obtain the requisite consent to remove from Sierra

8   Mortgage, and this court does not have jurisdiction under 28

9   U.S.C. § 1332.  (Pl.'s Mot. to Remand (Docket No. 8).)

10          A motion to remand a case on the basis of any defect

11  other than lack of subject matter jurisdiction must be made

12  within thirty days after the filing of the notice of removal

13  under 28 U.S.C. § 1446(a).  28 U.S.C. § 1447(c); <u>Pavone v. Miss.</u>

14  <u>Riverboat Amusement Corp.</u>, 52 F.3d 560, 566 (5th Cir. 1995).

15  "Federal courts strictly observe the thirty-day deadline for

16  filing motions to remand." <u>Alter v. Bell Helicopter Textron,</u>

17  <u>Inc.</u>, 944 F. Supp. 531, 535 (S.D. Tex. 1996) (citing <u>In re Shell</u>

18  <u>Oil Co.</u>, 932 F.2d 1518, 1522-23 (5th Cir. 1991) (holding that

19  remand was precluded when the motion to remand was filed thirty-

20  four days after the removal notice); <u>Elder v. Wal-Mart Stores,</u>

21  <u>Inc.</u>, 751 F. Supp. 639, 640 (E.D. La. 1990) (thirty-one days));

22  <u>see also</u> <u>Borchers v. Standard Fire Ins. Co.</u>, No. C-10-1706, 2010

23  WL 2608291, at *1 (N.D. Cal. June 25, 2010) (thirty-one

24  _____

25          [2]   Plaintiff's SAC also alleges claims against Quality
    Loan for slander of title, quiet title, and wrongful foreclosure,
26  and against Sierra Mortgage for violation of California Financial
    Code sections 4970-4979.8.  Quality Loan is named solely in its
27  capacity as a trustee; it apparently filed a declaration of
    nonmonetary status pursuant to California Civil Code section
28  2924*l* in state court.  (Pl.'s Mot. to Remand at 3 n.2 (Docket No.
    8).)

4

1   days); <u>Ramos v. Quien</u>, 631 F. Supp. 2d 601, 608 (E.D. Pa. 2008)
2   (thirty-one days).

3          MetLife filed its notice of removal with this court on
4   March 9, 2011, which gave plaintiff until April 8, 2011, to move
5   to remand.[3]  Plaintiff did not file her motion to remand until
6   April 11, 2011.[4]  Accordingly, plaintiff's motion was untimely.
7   Because the thirty-day limitation for a motion to remand on
8   procedural grounds also limits a court's authority to remand a
9   case <u>sua sponte</u> on such grounds, <u>Maniar v. F.D.I.C.</u>, 979 F.2d
10  782, 785 (9th Cir. 1992) (court may not consider plaintiff's
11  untimely argument that removal was untimely), the court will not
12  consider whether MetLife's removal was procedurally defective.

13         However, the court must still consider whether it has
14  subject matter jurisdiction over the action.  <u>See</u> 28 U.S.C. §
15  1447(c) ("If at any time before final judgment it appears that
16  the district court lacks subject matter jurisdiction, the case
17  shall be remanded.").  Plaintiff has brought federal claims under
18  the FDCPA and RESPA.  Because the court has federal question

19  ─────────────────────

20         [3]   The fact that March has thirty-one days does not change
       the interpretation of "thirty days" in § 1447(c).  Courts have
21     consistently applied this deadline to literally mean "thirty
       days" rather than "one month."  <u>See, e.g.</u>, <u>Elder v. Wal-Mart</u>
22     <u>Stores, Inc.</u>, 751 F. Supp. 639, 640 (E.D. La. 1990) (period from
       removal on August 20, 1990, to plaintiffs' motion to remand on
23     September 20, 1990, was thirty-one days, and thus plaintiffs'
       motion was untimely).
24

25         [4]   The weekend, April 9 and 10, is not counted against
       plaintiff.  <u>See</u> Fed. R. Civ. P. 6(a)(1)(C) ("When the period is
26     stated in days or a longer unit of time . . . include the last
       day of the period, but if the last day is a Saturday, Sunday, or
27     legal holiday, the period continues to run until the end of the
       next day that is not a Saturday, Sunday, or legal holiday.").
28     Because the deadline fell on a Friday, plaintiff was effectively
       one day late by filing her motion the following Monday.

1  jurisdiction, 28 U.S.C. § 1331, the court need not consider

2  plaintiff's argument regarding diversity jurisdiction.

3  Accordingly, plaintiff's motion to remand will be denied.

4      B.   <u>Motion to Strike</u>

5        MetLife moves to strike plaintiff's SAC on the ground

6  that she filed it without leave of court.  A plaintiff is allowed

7  to amend her complaint once as a matter of course.  Fed. R. Civ.

8  P. 15(a).  "When a state court action is removed to federal

9  court, the removal is treated as if the original action has been

10 commenced in federal court."  <u>Schnabel v. Lui</u>, 302 F.3d 1023,

11 1037 (9th Cir. 2002); <u>see also</u> <u>Butner v. Neustadter</u>, 324 F.2d

12 783, 785 (9th Cir. 1963) ("The federal court takes the case as it

13 finds it on removal and treats everything that occurred in the

14 state court as if it had taken place in federal court.")

15 (footnote omitted).

16       Because plaintiff filed her First Amended Complaint in

17 state court prior to removal to this court, plaintiff already

18 amended her pleading once as a matter of course.  Thus, she could

19 not properly file the SAC without first obtaining leave of court.

20 <u>Howell v. City of Fresno</u>, No. CV-F-07-371 OWW TAG, 2007 WL

21 1501844, at *2 (E.D. Cal. May 23, 2007); <u>see also</u> <u>Yazdanpanah v.</u>

22 <u>Sacramento Valley Mortg. Grp.</u>, No. C 09-02024, 2009 WL 4573381,

23 at *1 (N.D. Cal. Dec. 1, 2009).

24       However, even when a pleading is improperly filed, the

25 court may choose not to strike the pleading in the interests of

26 judicial economy.  <u>See</u> <u>Telles v. Stanislaus Cnty.</u>, No. 1:10-cv-

27 01911 AWI JLT, 2011 WL 643358, at *1 n.1 (E.D. Cal. Feb. 17,

28 2011); <u>Roybal v. Equifax</u>, No. 2:05-cv-01207 MCE KJM, 2008 WL

4532447, at *14 n.12 (E.D. Cal. Oct. 9, 2008); <u>Chang Heum Lee v.</u>
<u>Cnty. of Kern</u>, No. CV-F-07-1337 LJO SMS, 2007 WL 4372838, at *3
(E.D. Cal. Dec. 12, 2007); <u>Rhodes v. Elec. Data Sys. Corp.</u>, No.
CIV S-06-1715 MCE EFB, 2007 WL 1988750, at *1 n.2 (E.D. Cal. July
3, 2007); <u>Sapiro v. Encompass Ins.</u>, 221 F.R.D. 513, 517 (N.D.
Cal. 2004).  This is often true when "leave to amend would have
been granted had it been sought and when it does not appear that
any of the parties will be prejudiced by allowing the change."
Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 1484
(3d ed. 2010) (observing that "[p]ermitting an amendment without
formal application to the court under these circumstances is in
keeping with the overall liberal amendment policy of Rule 15(a)
and the general desirability of minimizing needless
formalities").

        Plaintiff's SAC makes two substantive changes from her
FAC: it adds a cause of action for predatory lending under
California Financial Code sections 4970-4979.8 and adds Sierra
Mortgage as a defendant as to that cause of action only.  While
the addition of Sierra Mortgage destroys diversity between the
parties, this court has jurisdiction because the case presents a
federal question.  Accordingly, the amendments do not appear to
prejudice any party.  Because the court would have granted leave
to amend had plaintiff sought it, the court will decline to
strike the SAC and will treat it as properly filed.[5]

─────────────

        [5]     The court will not consider MetLife's remaining
arguments in its motion to strike that portions of the SAC
referring to punitive damages, attorney's fees, statutory
damages, and injunctive relief should be stricken.  The court
will grant MetLife's motion to dismiss the SAC; therefore, the

1    C.   <u>Motion to Dismiss</u>

2         On a motion to dismiss, the court must accept the

3    allegations in the complaint as true and draw all reasonable

4    inferences in favor of the plaintiff.[6]  <u>Scheuer v. Rhodes</u>, 416

5    U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>

6    <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

7    (1972).  "To survive a motion to dismiss, a complaint must

8    contain sufficient factual matter, accepted as true, to 'state a

9    claim to relief that is plausible on its face.'"  <u>Ashcroft v.</u>

10   <u>Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting

11   <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This

12   "plausibility standard," however, "asks for more than a sheer

13   possibility that a defendant has acted unlawfully," and "[w]here

14   a complaint pleads facts that are 'merely consistent with' a

15   defendant's liability, it 'stops short of the line between

16   possibility and plausibility of entitlement to relief.'"  <u>Iqbal</u>,

17   129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556-57).

18        1.   <u>Slander of Title and Quiet Title</u>

19        Plaintiff alleges that title to her property was

20   
     _____

21   remaining arguments in the motion to strike are moot.

22        [6]   Metlife has requested that the court take judicial
     notice of publicly-recorded documents related to plaintiff's
23   mortgage.  (Docket No. 18.)  The court will take judicial notice
     of these documents, as they are matters of public record whose
24   accuracy cannot be questioned.  <u>See</u> <u>Lee v. City of Los Angeles</u>,
     250 F.3d 668, 689 (9th Cir. 2001).  MetLife has also requested
25   that the court take judicial notice of documents filed in state
     court before the action was removed.  To the extent that MetLife
26   requests that the court take judicial notice that the documents
     were filed in state court, the request is granted.  <u>See</u> <u>Burbank-</u>
27   <u>Glendale-Pasadena Airport Auth. v. City of Burbank</u>, 136 F.3d
     1360, 1364 (9th Cir. 1998).  However, the court will not take
28   judicial notice of any disputed facts contained in those
     documents.  <u>See</u> <u>Lee</u>, 250 F.3d at 690.

slandered when the Notice of Default and Notice of Trustee's Sale were recorded.  (SAC ¶¶ 13-22.)  To state a claim for slander of title, a plaintiff must establish: "1) a publication; 2) which is without privilege or justification; 3) which is false; and 4) which causes direct and immediate pecuniary loss."  <u>Jackson v. Ocwen Loan Servicing, LLC</u>, No. 2:10-cv-00711 MCE GGH, 2010 WL 3294397, at *4 (E.D. Cal. Aug. 20, 2010) (citing <u>Manhattan Loft, LLC v. Mercury Liquors, Inc.</u>, 173 Cal. App. 4th 1040, 1050-51 (2d Dist. 2009)).

        Plaintiff has not alleged that anything is false about the Notice of Default and Notice of Trustee's Sale.  She alleges that MetLife is not an owner of the underlying deed of trust and that she is not in default on the underlying indebtedness.  (SAC ¶ 19.)  As to the latter allegation, other portions of the SAC make clear that plaintiff was in fact in default on the indebtedness.  Even before MetLife allegedly told her not to pay so that she could qualify for a loan modification, she had missed payments on her loan.  (<u>Id.</u> ¶ 28.)  Thus, plaintiff has not plausibly alleged that the Notices were false in stating that she was in default.

        Furthermore, this court and others have made it abundantly clear that a party need not be the owner of the subject deed to foreclose on the property.  <u>See, e.g.</u>, <u>Foster v. SCME Mortg. Bankers, Inc.</u>, No. CIV 2:10-518 WBS GGH, 2010 WL 1408108, at *4 (E.D. Cal. Apr. 7, 2010) ("Under California Civil Code section 2924(a)(1), a 'trustee, mortgagee or beneficiary or any of their authorized agents' may conduct the foreclosure process.").  Plaintiff has alleged nothing false about the

1  Notices, and thus her claim for slander of title will be
2  dismissed.

3          The purpose of a quiet title action is to establish
4  one's title against adverse claims to real property.  California
5  Code of Civil Procedure section 761.020 states that a claim to
6  quiet title requires: (1) a verified complaint, (2) a description
7  of the property, (3) the title for which a determination is
8  sought, (4) the adverse claims to the title against which a
9  determination is sought, (5) the date as of which the
10 determination is sought, and (6) a prayer for the determination
11 of the title.  Cal. Civ. Proc. Code § 761.020.

12         The tender rule applies to a quiet title action.
13 Kozhayev v. America's Wholesale Lender, No. CIV S-09-2841 FCD
14 DAD, 2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010); see also
15 Shimpones v. Stickney, 219 Cal. 637, 649 (1934).  A "quiet title
16 action is doomed in the absence of Plaintiffs' tender of the full
17 amount owed."  Gjurovich v. California, No. 1:10-cv-01871 LJO
18 SMS, 2010 WL 4321604, at *8 (E.D. Cal. Oct. 26, 2010).  Here,
19 among other deficiencies, plaintiff has not alleged tender or the
20 ability to tender.[7]  Accordingly, the court will grant MetLife's
21 motion to dismiss the quiet title claim.

22         2.  Fraud

23         In California, the elements of a claim for fraud are

24

25     [7]   Plaintiff's allegation that she is "ready, willing and
   able to tender payments to MetLife and reinstate the loan in an
26 amount that is full and fair, calculated in accordance with the
   contract," (SAC ¶ 20), is insufficient to allege tender.
27 See Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (2d
   Dist. 1984) (tender is "an offer to pay the full amount of the
28 debt for which the property was security").

"(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>In re Estate of Young</u>, 160 Cal. App. 4th 62, 79 (4th Dist. 2008) (quoting <u>Lazar v. Super. Ct.</u>, 12 Cal. 4th 631, 638 (1996)) (internal quotation marks omitted).  Under the heightened pleading requirement for claims of fraud under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A plaintiff must include the "who, what, when, where, and how" of the fraud. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiff alleges that MetLife made the following misrepresentations: MetLife was the owner of the deed and note, which were transferred to MetLife by the true owner after the loan was created, (SAC ¶ 24), and payments should be made to MetLife, (<u>id.</u>), MetLife was willing to renegotiate the loan by allowing plaintiff to participate in its loan modification program and MetLife had the authority to modify the loan, (<u>id.</u> ¶ 28), plaintiff should not make payments so that she would qualify for the loan modification program, (<u>id.</u> ¶ 31), and during the loan modification process, MetLife would forbear on foreclosure proceedings and her credit would not be adversely affected. (<u>Id.</u> ¶ 31-32.)

Plaintiff alleges that she justifiably relied on the above representations and stopped making regular payments on the loan, repeatedly filled out form applications, and provided

11

1    MetLife with financial information.  (<u>Id.</u> ¶ 34.)  Damages

2    allegedly only resulted from the first act of reliance: when she

3    stopped making payments, she allegedly lost all ability to obtain

4    financing.  (<u>Id.</u> ¶ 37.)

5            While MetLife's statements that plaintiff should stop

6    making payments in order to participate in the loan modification

7    process and that MetLife would take no action against her do

8    appear to be misrepresentations, and even assuming that these

9    statements were pled with the requisite particularity, plaintiff

10   has fallen short of stating a plausible claim to relief.

11   Specifically, plaintiff had stopped making payments under the

12   loan before these alleged misrepresentations were made.  Unless

13   plaintiff can allege that the statements caused her to continue

14   not making payments, which she otherwise would have resumed

15   making, then MetLife's statements cannot have caused any damage.

16   Accordingly, the court will grant MetLife's motion to dismiss

17   plaintiff's claim for fraud.

18           3.  <u>Negligent Misrepresentation</u>

19           The elements of negligent misrepresentation under

20   California law are: "(1) the misrepresentation of a past or

21   existing material fact, (2) without reasonable ground for

22   believing it to be true, (3) with intent to induce another's

23   reliance on the fact misrepresented, (4) justifiable reliance on

24   the misrepresentation, and (5) resulting damage."  <u>Apollo Capital</u>

25   <u>Fund, LLC v. Roth Capital Partners, LLC</u>, 158 Cal. App. 4th 226,

26   243 (2d Dist. 2007).

27           The alleged misrepresentations plaintiff complains of

28

1  are identical to those in the fraud claim.[8]  (SAC ¶ 40.)  As

2  discussed above, plaintiff has not pled that any damage resulted

3  from any of MetLife's alleged misrepresentations, so her claim

4  for negligent misrepresentation fails.  The court therefore will

5  grant MetLife's motion to dismiss plaintiff's negligent

6  misrepresentation claim.

7          4.  <u>Bad Faith</u>

8          Plaintiff titles her fourth cause of action "bad

9  faith," and repeats most of the allegations from the other

10  claims, additionally alleging that MetLife never approved a loan

11  modification.  (<u>Id.</u> ¶¶ 45-69.)  The court construes the claim as

12  one for breach of the implied covenant of good faith and fair

13  dealing.

14          "Every contract imposes upon each party a duty of good

15  faith and fair dealing in its performance and its enforcement."

16  <u>Marsu, B.V. v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999)

17  (applying California law) (internal quotation marks omitted).

18  That duty, known as the covenant of good faith and fair dealing,

19  requires "that neither party . . . do anything which will injure

20  the right of the other to receive the benefits of the agreement."

21  <u>Andrews v. Mobile Aire Estates</u>, 125 Cal. App. 4th 578, 589 (2d

22  Dist. 2005) (internal quotation marks omitted).  "[T]he implied

23  covenant is limited to assuring compliance with the express terms

24  of the contract, and cannot be extended to create obligations not

25  _____

26          [8]  In addition to the forms of reliance in plaintiff's
    fraud claim, she alleges that she relied on MetLife's
27  misrepresentations by making mortgage payments.  (SAC ¶ 41.)
    This contradicts the portions of the SAC stating that plaintiff
28  stopped making mortgage payments, and it is unclear how making
    mortgage payments caused her any damage.

contemplated in the contract." <u>Racine & Laramie, Ltd. v. Dep't</u>
<u>of Parks & Recreation</u>, 11 Cal. App. 4th 1026, 1032 (4th Dist.
1992). "[T]he implied covenant is a supplement to an existing
contract, and thus it does not require parties to negotiate in
good faith prior to any agreement." <u>McClain v. Octagon Plaza,</u>
<u>LLC</u>, 159 Cal. App. 4th 784, 799 (2d Dist. 2008).

Here, plaintiff rests this claim on her attempts at
loan modification. (<u>See</u> SAC ¶ 46.)  However, plaintiff alleges
that MetLife "could not help plaintiff renegotiate the loan by
allowing plaintiff to participate in MetLife's loan modification
program, because it never had the authority to negotiate on
behalf of the true owner." (<u>Id.</u> ¶ 47.)  Taking plaintiff's
allegation as true, no contract existed between MetLife and
plaintiff that could have given MetLife an obligation to act in
good faith in its performance of that contract.  Furthermore,
because plaintiff has not alleged facts plausibly suggesting that
plaintiff and MetLife actually agreed to modify the loan, no
contract came into existence at that time, and the claim must
fail as it relates to loan modification.  <u>See Prasad v. BAC Home</u>
<u>Loans Servicing LP</u>, CIV No. 2:10-CV-2343 FCD KJN, 2010 WL
5090331, at *4 (E.D. Cal. Dec. 7, 2010) (granting motion to
dismiss when agreement to modify was not sufficiently alleged).
Accordingly, the court will grant MetLife's motion to dismiss
plaintiff's claim for "bad faith."

5.  <u>Wrongful Foreclosure</u>

Wrongful foreclosure is an action in equity, where a
plaintiff seeks to set aside a foreclosure sale that has already
occurred.  <u>See Karlsen v. Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d

112, 117 (2d Dist. 1971).  Because plaintiff's house has not yet
been sold, a claim for wrongful foreclosure is not yet ripe.
Accordingly, the court will grant MetLife's motion to dismiss
plaintiff's claim for wrongful foreclosure.

### 6.   Fair Debt Collection Practices Act

Plaintiff did not respond in her opposition to
MetLife's motion to dismiss her claim under the FDCPA.  The SAC
alleges that MetLife violated the FDCPA by threatening to
foreclose on the property and recording the Notice of Default and
Notice of Trustee's Sale without the right to do so.  (SAC ¶¶ 82-
83.)

The FDCPA provides that "[a] debt collector may not use
unfair or unconscionable means to collect or attempt to collect
any debt."  15 U.S.C. § 1692f.  The term "debt collector" is
defined as "any person . . . in any business the principal
purpose of which is the collection of any debts, or who regularly
collects or attempts to collect, directly or indirectly, debts
owed or due or asserted to be owed or due another."  Id. §
1692a(6).  The "definition of debt collector 'does not include
the consumer's creditors, a mortgage servicing company, or any
assignee of the debt, so long as the debt was not in default at
the time it was assigned.'"  Nool v. HomeQ Servicing, 653 F.
Supp. 2d 1047, 1053 (E.D. Cal. 2009) (quoting Perry v. Stewart
Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).  Plaintiff
alleges that MetLife was the servicer of the loan, and thus
MetLife cannot be subject to liability under the FDCPA.
Accordingly, the court will grant MetLife's motion to dismiss
plaintiff's FDCPA claim.

7.   <u>RESPA</u>

RESPA imposes a duty on loan servicers to take certain actions upon receipt of a qualified written request ("QWR") from a borrower asking for information relating to the servicing of the loan.  12 U.S.C. § 2605(e)(1)(A).  A QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Plaintiff alleges that:

> On November 16, 2010, plaintiff made a qualified written request under RESPA 12 USC §2605(e)(1)(A) to both MetLife and First Horizon under separate cover.  The first letter was a request for information under the Real Estate Settlement Procedures Act (RESPA) and the second was a request for an accounting of the amount necessary to reinstate the loan.

(SAC ¶ 88.)  Plaintiff did not attach the letters to the SAC.

While plaintiff is correct that she is not required to attach copies of the alleged QWRs to her complaint, she cannot simply allege in conclusory fashion that the written correspondence constituted QWRs.  <u>See, e.g.</u>, <u>Falcocchia v. Saxon Mortg., Inc.</u>, 709 F. Supp. 2d 873, 887-88 (E.D. Cal. 2010) (Karlton, J.) (dismissing RESPA claim because "[p]laintiffs make no other allegations regarding the content of this purported QWR, nor have plaintiffs provided a copy of the letter"); <u>Aguilar v. Cabrillo Mortg.</u>, No. 09-CV-1799, 2010 WL 1909547, at *2-3 (S.D.

16

Cal. May 11, 2010) ("Although Plaintiffs correctly argue that
they have no affirmative duty to attach a copy of the letter to
the SAC, they still must allege sufficient facts to demonstrate
that the letter sent to [defendant] triggered the procedures set
forth in 12 U.S.C. § 2605(e)."). Plaintiff's conclusory
allegations that her letters constituted QWRs are insufficient to
state a claim for a violation of RESPA. Accordingly, the court
will grant MetLife's motion to dismiss plaintiff's RESPA claim.

8.   <u>California Financial Code sections 4970-4979.8</u>

Plaintiff did not respond in her opposition to
MetLife's motion to dismiss her claim under California's
predatory lending laws. Plaintiff's only allegation regarding
MetLife in this claim is that MetLife "recommended or encouraged
the plaintiff to default on the loan or other debt in connection
with the solicitation or making of a covered loan that refinances
all or any portion of the existing consumer loan or debt." (SAC
¶ 107.)

California Financial Code section 4973, which prohibits
certain actions for covered loans, "covers lenders who negotiate
the terms of the loans, and not servicers . . . who become
involved with the loans after their execution." <u>Levy v.
Residential Credit Solutions Inc.</u>, No. 10-CV-0292, 2010 WL
3470656, at *3-4 (S.D. Cal. Sept. 2, 2010); <u>see</u> <u>Sutherland v.
Diversified Capital Inc.</u>, No. C 08-03474, 2008 WL 2951353, at *2
(N.D. Cal. July 24, 2008) ("[section] 4973 explicitly does not
apply to holders in due course").

Plaintiff makes no allegation that MetLife was the
original lender on her loan, and actually alleges that MetLife

17

1  was the servicer.  (SAC ¶ 90.)  Accordingly, MetLife cannot be

2  held liable for predatory lending under California law.[9]  Because

3  plaintiff fails to state a claim against MetLife, plaintiff's

4  claim for predatory lending will be dismissed.

5          IT IS THEREFORE ORDERED that:

6          (1) plaintiff's motion to remand be, and the same

7  hereby is, DENIED;

8          (2) MetLife's motion to strike be, and the same hereby

9  is, DENIED; and

10          (3) MetLife's motion to dismiss plaintiff's Second

11  Amended Complaint be, and the same hereby is, GRANTED.

12          Plaintiff has twenty days from the date of this Order

13  to file an amended complaint, if she can do so consistent with

14  this Order.

15  DATED:  May 24, 2011

16

17  _____

18  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

19

20

21

---

22      [9]  Plaintiff has also failed to allege sufficient facts to
   show that her loan was a "covered loan" and thus subject to
23  California Financial Code section 4973.  A "covered loan" means
   "a consumer loan in which the original principal balance of the
24  loan does not exceed the most current conforming loan limit for a
   single-family first mortgage loan established by the Federal
25  National Mortgage Association in the case of a mortgage or deed
   of trust," and where one of two conditions regarding annual
26  percentage rate or points and fees payable at closing are
   established.  Cal. Fin. Code § 4970(b); see House v. Cal State
27  Mortg. Co., No. CV-F-08-1880 OWW GSA, 2009 WL 2031775, at *18
   (E.D. Cal. July 9, 2009) ("Plaintiff must allege the specific
28  facts from which it may be inferred that the loans at issue were
   'covered' loans within the meaning of the statute.").