UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MEREDITH L. MANZANO, an individual, | NO. CIV. 2:11-651 WBS DAD |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| METLIFE BANK N.A., Quality Loan Service Corp; and DOES 1 to 10, inclusive. | |
| Defendants. | |

----oo0oo----

Plaintiff Meredith L. Manzano brought this action against defendants MetLife Bank, N.A. ("MetLife") and Quality Loan Service Corp. ("Quality Loan") arising out of defendants' allegedly wrongful conduct relating to a residential loan agreement.  On May 24, 2011, the court dismissed plaintiff's Second Amended Complaint ("SAC").  (Docket No. 26.)  Plaintiff filed her Third Amended Complaint ("TAC") on June 13, 2011, asserting only one cause of action: violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617,

1

against MetLife.[1] (Docket No. 27.) Presently before the court is MetLife's motion to dismiss plaintiff's TAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. Factual and Procedural Background

Plaintiff is the owner of real property located at 168 Beaver Trail in Mammoth Lakes, California. (TAC ¶ 6 (Docket No. 27).) MetLife owns a Deed of Trust on the property and is allegedly threatening to foreclose. (Id. at ¶¶ 7-8.) On November 16, 2010, plaintiff allegedly sent a Qualified Written Request ("QWR") to MetLife concerning payments that she believed were not properly credited to her account. (Id. ¶ 14; Ex. A.) MetLife allegedly failed to respond to plaintiff, (id. ¶ 15), and provided adverse information concerning plaintiff's loan to various consumer reporting agencies. (Id. ¶ 24.)

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

---

[1] Plaintiff's TAC also names Quality Loan as a defendant, solely in its capacity as a trustee. Quality Loan filed a declaration of nonmonetary status pursuant to California Civil Code section 2924*l* in state court. (Pl.'s Mot. to Remand at 3 n.2 (Docket No. 8).) Plaintiff's TAC states no claims against Quality Loan.

Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57).

MetLife makes two specific arguments in support of dismissal: first, the letter plaintiff sent to MetLife on November 16, 2010, was not a QWR; and second, plaintiff has failed to adequately plead damages resulting from MetLife's alleged RESPA violation.  MetLife does not otherwise argue that plaintiff fails to state a plausible claim for relief under RESPA.

A.   Qualified Written Request[2]

RESPA imposes a duty on loan servicers to take certain actions upon receipt of a QWR from a borrower seeking information relating to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(A). A QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the

---

[2] The court previously dismissed plaintiff's RESPA claim against MetLife because plaintiff failed to plead any facts indicating that the request she purportedly sent was, in fact, a QWR. (May 24, 2011, Order at 16:1-17:8 (Docket No. 26).) Plaintiff now attaches her purported QWR as Exhibit A to her TAC.

>     account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Within twenty days of receiving a QWR, a loan servicer must provide a written response to the borrower acknowledging receipt. 12 U.S.C. § 2605(e)(1)(A). Within sixty days, the loan servicer must either (1) correct the errors complained of in the borrower's QWR, (2) provide a written explanation or clarification as to why the borrower's account is, in fact, correct, or (3) provide a written explanation or clarification as to why the information requested in the QWR is unavailable. 12 U.S.C. § 2605(e)(2)(A)-(C). Additionally, during the sixty-day period following receipt of the QWR, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . ." 12 U.S.C. § 2605(e)(3).

Plaintiff's purported QWR includes plaintiff's name and account number and clearly indicates that plaintiff believed her statements were in error because "certain payments may not have been properly credited to [her] account." (TAC Ex. A.) MetLife nonetheless contends that the purported QWR "fails to state any reasons for the plaintiff's belief that the account was in error" and fails to include "any facts as to why the plaintiff believed certain payments may not have been properly credited to the account." (Mot. to Dismiss at 4:3-6 (Docket No. 28).)

Plaintiff's assertion that her account statements were inaccurate due to MetLife's failure to appropriately credit payments plainly states a "reason[] for the belief of the

4

borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B)(ii).  MetLife's contention that a borrower is required to speculate as to <u>why</u> her payments were not properly credited to her account is unsupported by the plain language of RESPA.  While RESPA requires a borrower to state a reason for her belief, it does not demand a secondary level of speculation or explanation.  The court will not require a greater degree of specificity than what Congress has clearly set forth.

Accordingly, construed in the light most favorable to plaintiff, her November 16 letter was, on its face, a QWR.[3]  <u>See</u> <u>Garcia v. Wachovia Mortg. Corp.</u>, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (plaintiff's request constituted a QWR notwithstanding failure to include a statement of the reasons for the borrower's belief that the account was in error); <u>Quintero Family Trust v. OneWest Bank, F.S.B.</u>, No. 09-CV-1561, 2010 WL 2618729, at *9-10 (S.D. Cal. June 25, 2010) (plaintiffs' request constituted a QWR because it "dispute[d]" the amount due and requested information related to the servicing of plaintiffs' loan).  <u>Cf.</u> <u>Cruz v. Mortg. Lenders Network, USA</u>, No. 09-CV-1679, 2010 WL 3745932, at *2 (S.D. Cal. Sept. 20, 2010) (request did not constitute a QWR

---

[3] MetLife additionally contends that plaintiff's letter cannot constitute a QWR because it is overly broad and includes "a laundry list of 15 requests for information, some of which do not relate to the servicing of the loan." (Mot. to Dismiss at 4:7-8 (Docket No. 28).) Some of plaintiff's requests, however, relate directly to the servicing of the loan and "provide[] sufficient detail to the servicer regarding other information sought by the borrower" as required under RESPA.  12 U.S.C. § 2605(e)(1)(B)(ii).  Further, MetLife cites no authority supporting its argument that the inclusion of extraneous, even overly burdensome, requests such as those here renders the entire instrument ineligible as a QWR.

5

where plaintiff included no statement of reasons for belief that plaintiff's account was in error nor sought information pertaining to the accuracy of plaintiff's account or the servicing of plaintiff's loan).

"A written request does not constitute a qualified written request if it is delivered to a servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable." 24 C.F.R. § 3500.21(e)(2)(ii). On April 16, 2009, plaintiff's loan servicing was transferred from First Horizon to MetLife. (Mot. to Dismiss at 3 n.3.) MetLife contends that because plaintiff did not send her purported QWR to MetLife until November 16, 2010, well over one year after the transfer occurred, plaintiff's request did not constitute a QWR. Id.

While the language of the statute is less than clear, other courts have held that, in the context of loan servicing transfers, the one-year limitation applies only to prior servicers from whom an aggrieved borrower seeks information. See Campiglia v. Saxon Mortg. Servs., Inc., No. C09-01893, 2010 WL 725560, at *3 (N.D. Cal. Mar. 12, 2010) (noting that application of the statute to subsequent loan servicers "would leave a plaintiff with no RESPA remedy as long as a servicer's [RESPA violation] occurred more than one year after a servicer assumed responsibility for a loan" and that such an interpretation "could not have been what Congress intended"); see also Tacheny v. M & I Marshall & Ilsley Bank, No. 10-CV-2067, 2011 WL 1657877, at *6 n.4 (D. Minn. Apr, 29, 2011) (statute bars characterization of

request as QWR when request was sent to prior servicer more than one year after transfer); <u>Brunson v. Am. Home Mortg. Servicing</u>, No. 2:09-CV-436, 2010 WL 1329711, at *5 (D. Utah Mar. 30, 2010) (same).  This interpretation makes sense.  MetLife cites no contrary authority and the court has found none.  Accordingly, the court will not dismiss plaintiff's RESPA claim on the ground that her purported QWR was fatally vague or untimely.[4]

    B.   <u>Damages</u>

Aggrieved borrowers may recover for actual damages arising from RESPA violations.  12 U.S.C. § 2605(f)(1)(A).  While RESPA does not explicitly require a claimant to allege pecuniary loss as a requisite to stating a claim, courts have read into the statute such a requirement.  <u>Allen v. United Fin. Mortg. Corp.</u>, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  MetLife contends that even if plaintiff's request constitutes a QWR, plaintiff still fails to state a claim under RESPA because she does not "plead any actual pecuniary loss caused by METLIFE BANK's alleged failure to respond to the [QWR]."  (Reply to Pl.'s Opp'n to Mot. to Dismiss at 4:10-11 (Docket No. 31).)  However, plaintiff alleges that MetLife not only failed to respond to plaintiff's QWR but also purportedly "provided information regarding allegedly overdue payments . . . to multiple consumer reporting

---

[4] MetLife also claims that plaintiff's RESPA claim fails because the TAC is "devoid of any allegation that METLIFE BANK was authorized by [plaintiff] to communicate with a third party regarding the loan," in this case, her attorney.  (Mot. to Dismiss at 4 n.4.)  In order to trigger a servicer's duties under RESPA, a QWR must be made by a borrower <u>or an agent of the borrower</u>.  12 U.S.C. § 2605(e)(1)(A).  MetLife received a QWR from plaintiff's attorney, i.e., her agent.  Thus, the QWR triggered MetLife's duty to respond.

7

agencies including . . . Equifax," in violation of 12 U.S.C. 2605(e)(3).  (TAC ¶ 24.)

Plaintiff avers that MetLife's allegedly unlawful disclosure of adverse loan information resulted in her inability to "obtain credit or refinancing" and caused her to "incur excessive interest costs and penalties . . . in excess of $100,000.00."  (Id. ¶ 25.)  Taking the allegations in the light most favorable to plaintiff, her claim that MetLife's RESPA violation resulted in a negative impact on plaintiff's credit history and caused her to incur substantial costs is sufficient to state a claim for damages under RESPA.  Accordingly, the court will not dismiss plaintiff's RESPA claim for failure to plead damages resulting from a RESPA violation.

IT IS THEREFORE ORDERED that MetLife's motion to dismiss plaintiff's Third Amended Complaint be, and the same hereby is, DENIED.

DATED:  August 2, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE